T.C. Memo. 1998-30


UNITED STATES TAX COURT


WAYNE L. PATRICK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

BRIAN J. PATRICK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 26419-96, 26420-96.     Filed January 26, 1998.


Joseph Falcone and Brian H. Rolfe, for petitioners.

Mark L. Hulse and Laurence D. Ziegler, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  On October 4, 1996, respondent issued separate notices of deficiency to Brian J. Patrick (Brian) and Wayne L. Patrick (Wayne) based on their failure to include in gross income the distributions from a qualified profit-sharing plan and on

Wayne's failure to include in gross income the distributions from an individual retirement account (IRA). Respondent determined deficiencies and additions to tax as follows:

Wayne L. Patrick--docket No. 26419-96:

|  |  | Additions to Tax | |
| --- | --- | --- | --- |
|  |  | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6654 |
| 1992 | $221,831 | $55,458 | $9,679 |
| 1993 | 11,647 | 2,912 | 488 |
| 1994 | 9,248 | 2,312 | 476 |

Brian J. Patrick--docket No. 26420-96:

|  |  | Additions to Tax | |
| --- | --- | --- | --- |
|  |  | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6654 |
| 1992 | $53,128 | $13,157 | $2,294 |
| 1993 | 5,701 | 1,425 | 239 |
| 1994 | 7,421 | 1,855 | 382 |

Petitioners separately petitioned the Court on December 10, 1996, to redetermine respondent's determinations. On October 7, 1997, the cases were consolidated for trial, briefing, and opinion.

Following concessions, we must decide:

1. Whether the money each petitioner received from Erie Industries, Inc. Employees' Profit Sharing Plan (the Plan) is includable in his gross income. We hold that it is.

2. Whether the money Wayne received from his IRA is includable in his gross income for 1993 and 1994. We hold it is.

3. Whether petitioners are liable for the 10-percent additional tax determined by respondent under section 72(t). We hold they are.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulations and the exhibits attached are incorporated herein by this reference, and the facts contained therein are so found. Petitioners resided in West Bloomfield, Michigan, when they petitioned the Court.

Before and during the years in issue, petitioners were the owners, operators, employees, and shareholders of Erie Industries, Inc. (Erie Industries). Erie Industries is a subchapter S corporation engaged in precision machining and grinding. At all times, petitioners were at least 10-percent shareholders in the corporation.

Erie Industries maintained the Plan, which was a defined-contribution profit-sharing plan established to operate as a qualified plan described in section 401(a). The Erie Industries, Inc. Employees' Profit Sharing Trust was formed under the Plan. Wayne was the Plan trustee, and Erie Industries was the Plan administrator. Petitioners participated in the Plan.

The summary plan description provides for discretionary loans made from the Plan to participants and beneficiaries.[1] According to section VIII of the summary plan description, a participant had to apply for a loan on forms provided by the Plan administrator. The Plan administrator would then decide whether a participant qualified for the loan and inform the trustee of this decision. The trustee would review the administrator's decision and make an independent decision on whether to approve the loan. Also, according to the summary plan description, Plan loan requirements included the following: (1) Loans must be made available to all participants and their beneficiaries on a uniform and nondiscriminatory basis; (2) loans must be adequately secured, with up to one-half of a participant's vested account balance as security for the loan; (3) loans must bear a reasonable rate of interest; (4) loans must have a definite repayment period which provides for payments to be made not less frequently than quarterly, and for the loan to be amortized on a level basis over a reasonable period of time, not to exceed 5 years;[2] (5) loans must be limited by the rules of the Internal

---

[1] At trial, petitioners submitted Exhibit 7-G entitled "Erie Industries, Inc. Employees' Profit Sharing Trust Summary Plan Description", and the Court allowed the exhibit into evidence as a summary plan description and not as a representative copy of the Plan itself. Petitioners failed to locate and produce a copy of the Plan.

[2] The 5-year amortization period could be extended if the
(continued...)

Revenue Code; and (6) total loans to any one participant must be limited to the lesser of $50,000, with some adjustment for outstanding balance of loans, or one-half of a participant's or beneficiary's vested account balance.[3]  Failure to make payments when due under the terms of the loan agreement would result in a default, whereby the trustee had the authority to collect the balance of the loan through any reasonable action that included instituting a lawsuit, foreclosing on any security, or recharacterizing the loan as a deemed distribution.

As participants in the Plan, petitioners entered into a series of transactions with the Plan.  During 1992, Brian received $207,300 from the Plan.[4]  The following promissory notes were prepared to evidence the transfers of the underlying amounts:

| Date on Note | Amount of Note |
| --- | --- |
| 01/31/92 | $110,000 |
| 02/28/92 | 26,000 |
| 03/31/92 | 6,000 |
| 04/30/92 | 2,000 |
| 05/31/92 | 10,000 |
| 06/30/92 | 2,000 |
| 07/31/92 | 31,000 |
| 08/31/92 | 10,000 |

[2](...continued)
loan was used to acquire a participant's principal residence.

[3]  These requirements were intended to incorporate the loan requirements embodied in sec. 72(p)(2)(A), (B), and (C).

[4]  At that time, Brian had not attained either retirement age under the Plan or the age of 59-1/2.  See sec. 72(t)(2).

|  |  |
|---|---|
| 09/30/92 | 3,000 |
| 10/31/92 | 2,000 |
| 12/31/92 | 5,300 |
| Total | [1]207,300 |

[1] Respondent's notice of deficiency incorrectly identifies the total amount of the transfers as $205,300, and respondent's deficiency determination is based on that figure. Respondent does not seek an increase in the deficiency determination.

Most, if not all, of the notes were prepared after the corresponding transfers, and the notes dated September 30, October 31, and December 31, 1992, were not signed. Brian did not report any income with respect to these transfers.

In 1992 and 1993, Wayne received $624,000 and $17,000, respectively, from the Plan.[5] The following promissory notes were prepared to evidence the transfers of the underlying amounts:

| Date on Note | Amount of Note |
|---|---|
| 01/31/92 | $190,000 |
| 02/28/92 | 15,000 |
| 03/31/92 | 66,000 |
| 04/30/92 | 75,000 |
| 05/31/92 | 115,000 |
| 06/30/92 | 10,000 |
| 07/31/92 | 73,000 |
| 08/31/92 | 35,000 |
| 10/31/92 | 35,000 |
| 12/31/92 | 10,000 |
| Total | 624,000 |
| | |
| 02/28/93 | 17,000 |

---

[5] At that time, Wayne had not attained either retirement age under the Plan or the age of 59-1/2. See sec. 72(t)(2).

Most, if not all, of these notes were prepared after the corresponding transfers, and the May 31, 1992, note is not signed.  Wayne did not report any income with respect to these transfers.

Each of petitioners' promissory notes contains the following terms:  Repayment of principal with interest from date of transfer at a rate of 10 percent per annum; and payment in equal monthly installments commencing approximately 1 month after the date of each transfer until the earlier of repayment of principal and interest in full or 5 years from the date of the transfer. As security for each transfer, petitioners pledged their respective vested account balances.  The record does not disclose the amounts of these balances at any time that is relevant herein.

During 1993 and 1994, Wayne maintained an IRA with Merrill Lynch.  He received $9,000 from this account in 1993 and $9,307 in 1994.  He did not report any income with respect to these amounts.

OPINION

We must decide whether the funds received by petitioners from their retirement accounts are includable in their gross incomes.  Petitioners argue that the transfers from the Plan are loans from the Plan and nontaxable to the extent of $50,000 for each petitioner.  Petitioners concede that the transfers over

$50,000 to each of them are distributions and, as such, are income to the recipients. See sec. 72(p)(2)(A). Respondent argues that there were no bona fide loans between the Plan and petitioners, and that no part of the transfers qualifies as a nontaxable loan under section 72(p)(2). In the alternative, respondent argues that even if the transfers were loans, the amounts received would still be deemed distributions under section 72(p) and, as such, income to petitioners. As to all issues, petitioners bear the burden of establishing that respondent's determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

## I. Distributions From the Plan and Bona Fide Debt

Section 402(a) provides that "any amount actually distributed to any distributee by any employees' trust described in section 401(a) * * * shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under section 72".[6] Section 72(p)(1)(A) generally provides that loans from a qualified employer plan to plan participants or beneficiaries are treated as taxable distributions. Section 72(p)(2) provides an exception, however, where the following requirements are met: (1) The loan does not exceed the lesser of the amount set forth in section 72(p)(2)(A)(i) or (ii); (2) the

---

[6] The provision applies to distributions made after Dec. 31, 1992. For our purposes, the version of sec. 402(a) in effect for distributions made in 1992 was essentially the same.

loan, by its terms, must be repaid within 5 years from the date of its inception or is made to finance the acquisition of a home which is the principal residence of the participant; and (3) the loan must have substantially level amortization with quarterly or more frequent payments required over the term of the loan. Section 72(p)(2) applies only to distributions that are intended to be loans.

Respondent argues that the transfers from the Plan were taxable distributions and not loans. In support, respondent cites the following factors: In all cases in which the notes were signed, the notes were signed well after the transfers were made; petitioners presented no evidence, other than copies of the notes, that the Plan, the Plan administrator, the Plan trustee, or petitioners maintained any records reflecting the transfers as loans; any repayments on the notes, if in fact made, were insignificant; there was at no time a demand for repayment and no steps were taken to enforce the notes; neither petitioner had the ability to repay the transferred funds; and the notes were between related parties and the form of the transaction should not be honored where it lacks economic reality. In response, petitioners argue that sufficient "indicia of debt" are present to justify characterizing the transfers as loans.

A transfer of money will be characterized as a loan for Federal income tax purposes where "'at the time the funds were

transferred, [there was] an unconditional intention on the part of the transferee to repay the money, and an unconditional intention on the part of the transferor to secure payment.'" Geftman v. Commissioner, T.C. Memo. 1996-447 (quoting Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988)). In other words, the parties must intend to create bona fide debt. The intention of the parties "relates not so much to what the transaction is called, or even what form it takes as it does to an actual intent that money advanced will be repaid." Berthold v. Commissioner, 404 F.2d 119, 122 (6th Cir. 1968), affg. T.C. Memo. 1967-102; see also Livernois Trust v. Commissioner, 433 F.2d 879, 882 (6th Cir. 1970), affg. T.C. Memo. 1969-111. However, because direct evidence of a taxpayer's state of mind is not generally available, courts have focused on certain objective factors to determine whether a bona fide loan exists: (1) The existence or nonexistence of a debt instrument; (2) provisions for security, interest payments, and a fixed repayment date; (3) whether the parties' records, if any, reflect the transaction as a loan; (4) the source of repayment and the ability to repay; (5) the relationship of the parties; (6) whether any repayments have been made; (7) whether a demand for repayment has been made; and (8) failure to pay on the due date or to seek a postponement. See

Smith v. Commissioner, 370 F.2d 178, 180 (6th Cir. 1966), affg. T.C. Memo. 1964-278; Haag v. Commissioner, supra at 616 n.6.

The above factors are not exclusive, and no one factor is dispositive. See John Kelley Co. v. Commissioner, 326 U.S. 521, 530 (1946); Smith v. Commissioner, supra. The factors are simply objective criteria helpful to the Court in analyzing all relevant facts and circumstances. The ultimate question remains whether "there [was] a genuine intention to create a debt, with a reasonable expectation of repayment, and did that intention comport with the economic reality of creating a debtor-creditor relationship". Litton Bus. Sys. Inc. v. Commissioner, 61 T.C. 367, 377 (1973). This is a factual issue, to be decided upon all the facts and circumstances in each case. Geftman v. Commissioner, supra. Petitioners must prove that a bona fide debt was created and that the transfers were loans. Rule 142(a); Welch v. Helvering, supra.

Both Brian and Wayne testified that it was their intention to obtain Plan loans. Such testimony is, however, overcome by other evidence and is therefore not controlling. See Livernois Trust v. Commissioner, supra. We now turn to the objective factors relevant to the instant case.

a. The Existence or Nonexistence of a Debt Instrument

The existence of a promissory note for each transfer of funds is evidence of debt. However, respondent argues that the

existence of notes in this case is not strong evidence of the character of the transactions because the notes were not signed on or around the time of the distributions. Petitioners argue that the presence of the notes is strong evidence of debt.

Brian testified that the notes were not prepared or signed contemporaneously with the receipt of funds. He was unsure of when he had signed the notes but believed it to be in either 1992 or 1993. Brian further stated that he signed the notes "at least a year" after the receipt of the funds. Wayne did not know exactly when he had signed the notes. Given this testimony and other evidence in the record, the mere presence of notes is assigned little weight unless supported by some other objective evidence showing the distributions to be loans, especially considering petitioners' relationship to Erie Industries and Wayne's position as Plan trustee. Additionally, Brian's failure to sign three of his notes and Wayne's failure to sign one of his notes weakens petitioners' position that the notes are strong evidence of debt. Under these circumstances, "form does not necessarily correspond to the intrinsic economic nature of the transaction". Fin Hay Realty Co. v. United States, 398 F.2d 694, 697 (3d Cir. 1968). This indicium offers no more than marginal support for the existence of debt.

### b. Provisions for Security, Interest Payments, and a Fixed Repayment Date

The notes contain provisions for security, payment of principal and interest, and a fixed repayment schedule over a 5-year period.  Respondent argues that the existence of these provisions is weak evidence of debt because the notes were not signed until after the distributions were received and the provisions were ignored by both the Plan trustee and the administrator.

Security, interest, and repayment arrangements are ordinarily important proofs of intent to treat the transaction as debt.  Berthold v. Commissioner, supra at 122.  However, the fact that the funds were distributed before the drafting and signing of the notes militates against assigning much weight to this indicium.[7]  Accordingly, this indicium offers no more than marginal support for the existence of debt.

c.  The Parties' Records

Respondent notes that petitioners provided no evidence, other than the notes, that the Plan, the Plan administrator, the Plan trustee, or petitioners maintained any records reflecting the transfers as loans.  The record is indeed void of any other evidence that the parties maintained records indicating that the transfers created debt.  This indicium supports a finding that the transfers did not create bona fide debt.

_____

[7]  We also note that no steps were taken to enforce these provisions.

d.  The Source of Repayment and the Ability To Repay

Respondent argues that petitioners had no ability to repay the transfers, and this indicium of debt is thereby lacking.  The monthly installments, including interest, for Brian's 1992 "loans" totaled $4,405.74.  In 1992 through 1994, Brian received wages, additional income, and interest income totaling $14,307, $45,364, and $51,291, respectively.  Brian testified that he was aware of the fact that the 1992 notes required monthly payments totaling approximately $52,000 a year.  He also testified that he entered into the transactions knowing that his wages for 1992 were only $14,000.  The monthly installments, including interest, for Wayne's 1992 and 1993 "loans" totaled $13,623.08.  In 1992 through 1994, Wayne received wages, interest and dividend income totaling $13,439, $45,359, and $57,352, respectively. Petitioners' inability, ab initio, to meet their contractual obligation to service these "loans" is evidence that petitioners had no intention of treating the transactions as bona fide debt. We also note that Wayne's testimony that his repayment of the "loans" was contingent on the future success of Erie Industries supports our finding that Wayne did not intend to treat the transfers as bona fide debt.  This indicium supports a finding that the transactions did not create bona fide debt.  Cf. Fuller v. Commissioner, T.C. Memo. 1980-370 (taxpayers submitted evidence that their net worth substantially exceeded the sum of

the balances on the promissory notes, and thereby demonstrated their ability to repay the obligation).

### e.  The Relationship of the Parties

Two facts color the transactions between petitioners and the Plan:  (1) Petitioners' status as owners, operators, employees, and shareholders in Erie Industries; and (2) Wayne's position as the Plan's trustee.  Where the nominal creditor and debtor are controlled by the same party and the arm's-length dealing that characterizes the market is lacking, the substance of the transaction and not its form is controlling.  Road Materials, Inc. v. Commissioner, 407 F.2d 1121, 1124 (4th Cir. 1969), affg. on this issue T.C. Memo. 1967-187.  In determining whether the form of a transaction between closely related parties has substance, we should compare their actions with what would have occurred if the transaction had occurred between parties who were dealing at arm's length.  Peck v. Commissioner, 904 F.2d 525 (9th Cir. 1990), affg. 90 T.C. 162 (1988); Maxwell v. Commissioner, 95 T.C. 107, 117 (1990).

We find that under the standards of parties dealing at arm's length, the transactions at issue were not bona fide loans.  Among other things, an administrator, trustee, or other fiduciary of a plan dealing at arm's length with a participant would not have approved "loans" where the participant lacked any documented ability to meet payment obligations.  Although the Plan's

administrator was required by the Plan to authorize any loan, we find no such authorization during the subject years. Furthermore, Wayne testified that he never reviewed the Plan or supporting documents, even though he was the Plan's trustee. We are left to conclude that petitioners rubberstamped these transfers. This indicium supports a finding that the transfers did not create bona fide debt.

### f. Whether Repayments Have Been Made

Respondent argues that any repayment made by petitioners is insignificant. Brian testified that in 1995 he repaid approximately $3,000. Wayne testified that he had repaid only "a few thousand dollars". He stated that he did not remember making any payments or when the alleged payments had been made. We are unpersuaded by this testimony, and neither petitioner presented any objective evidence that any payment had been made on the notes. This indicium supports a finding that the transfers did not create bona fide debt.

### g. Demand for Repayment

Respondent points to the fact that no demand for repayment has been made as evidence that these transactions were not loans. The record supports a finding that no steps were taken to enforce the loans. Wayne was not aware of his duties as Plan trustee, and he took no steps to collect on either his or Brian's notes. Moreover, Wayne testified that he was not even aware of whether

Brian was in default. This indicium supports a finding that there was no bona fide debt.

### h. Failure To Pay or Seek a Postponement

Brian testified that he repaid "a little bit" of the transfers, "approximately $3,000". He further testified that he made no repayments in 1992, 1993, or 1994. Supposedly a small repayment was made in 1995, and then only after he became aware that there might be "a problem" with the "loans". Brian made no effort to seek a postponement of payment on the alleged liability. Wayne testified that he had repaid only "a few thousand dollars". He had no idea of when these repayments were made. Wayne also made no effort to seek a postponement of payment on the alleged liability. This indicium supports a finding that there was no bona fide debt.

### i. Conclusion

On the basis of our review of all relevant factors, we find that the 1992 and 1993 transfers from the Plan to petitioners were taxable distributions and not loans.

## II. Distributions From Wayne's IRA

Respondent determined that Wayne received taxable distributions from his IRA during 1993 and 1994 in the amounts of $9,000 and $9,307, respectively. In his petition, Wayne contends that he did not receive taxable premature distributions from his IRA. In his response to respondent's request for admissions,

Wayne further contends that the funds received from the IRA were loans. Wayne did not address this issue at trial or on brief.[8]

Under section 408(d)(1), "any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee * * * in the manner provided under section 72." See also Campbell v. Commissioner, 108 T.C. 54 (1997). Generally, any amount distributed from an IRA is includable in the gross income of the recipient in the year in which the distribution is received. Sec. 408(d)(1); sec. 1.408-4(a)(1), Income Tax Regs. Because there is no evidence in the record that Wayne made nondeductible contributions to his IRA, we find that his tax basis in the IRA was zero. Sec. 1.408-4(a)(2), Income Tax Regs.; see also sec. 72(e)(2)(B). Therefore, he is afforded no credit for any investment in the IRA within the meaning of section 72(e)(3)(A) and (6). See also Vorwald v. Commissioner, T.C. Memo. 1997-15. The distributions are thereby allocated to, and included in, Wayne's gross income as follows: $9,000 for 1993 and $9,307 for 1994.

_____

[8] Wayne appears to have abandoned his untenable position that the funds were received in the form of loans. Unlike a loan from a qualified plan, a loan from an IRA to its owner is always a prohibited transaction (there is no exception for loans from an IRA to its beneficiary). Sec. 4975(d); Employee Retirement Income Security Act of 1974, Pub. L. 93-406, sec. 408(d), 88 Stat. 829, 885. If such a loan was made, the IRA would lose its exemption and all assets would be deemed distributed. Sec. 408(e)(1) and (2).

III.  Section 72(t) -- Additional Tax

Respondent determined a 10-percent additional tax under section 72(t) for premature distributions made from a qualified retirement plan to petitioners.  Section 72(t) imposes an additional tax on any amount received from a qualified retirement plan equal to 10 percent of the amount includable in gross income.  For purposes of the 10-percent tax, a qualified retirement plan includes an IRA described under section 408(a).  See sec. 4974(c)(4).  Several exceptions to the imposition of the additional tax are enumerated in section 72(t)(2).  Petitioners presented neither evidence nor argument in support of the application of any of the exceptions.  Therefore, we find that petitioners are liable for the 10-percent additional tax under section 72(t) as follows:  Brian as to the entire 1992 Plan distributions; Wayne as to the entire 1992 and 1993 Plan distributions and as to the entire 1993 and 1994 IRA distributions.

We have considered all other arguments made by the parties and found them to be either irrelevant or without merit.

To reflect the foregoing,

Decisions will be entered

for respondent.