T.C. Memo. 2001-71

UNITED STATES TAX COURT

CLAYTON W. PLOTKIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13365-99.          Filed March 23, 2001.

<u>Wayne A. Smith</u>, for petitioner.

<u>Charles B. Burnett</u> and <u>J. Robert Cuatto</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a $12,188 deficiency in petitioner's 1994 Federal income tax as well as a $2,437.60 section 6662(a)[1] accuracy-related penalty.  The first issue for decision is whether the amount which petitioner received as a

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

loan from his employer's pension plan constitutes a taxable distribution under section 72(p). If so, we must determine whether petitioner is liable for the 10-percent additional tax under section 72(t) by reason of such distribution as well as whether petitioner is liable for the section 6662(a) accuracy-related penalty.

FINDINGS OF FACT

Certain facts have been stipulated and are so found. The stipulation of facts and the exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Phoenix, Arizona.

Petitioner is an attorney who practices primarily in the fields of civil litigation and domestic relations. During the year at issue, petitioner conducted his law practice through a professional corporation, Clayton W. Plotkin, P.C. (the corporation). Petitioner was the corporation's sole director, officer, and shareholder.

In 1982, the corporation adopted the Clayton W. Plotkin, P.C. Money Purchase Plan (the plan), a pension plan exempt from income taxation pursuant to sections 401(a) and 501(a). After hiring an attorney to establish the plan, petitioner hired E.A. Edberg and Associates (Edberg) to administer the plan. The plan was restated in 1989, amended in 1993, and ultimately terminated in 1999.

In 1990, Edberg prepared a loan policy for the plan which was adopted by petitioner as the sole member of the plan's Advisory Committee. Pursuant to the policy, a plan participant could apply for a loan in an amount not to exceed one-half of the participant's nonforfeitable accrued benefit. The maximum aggregate dollar amount of loans outstanding to any one participant, when aggregated with all participant loans from other employer qualified plans, could not exceed $50,000.[2] All loans were subject to approval by the plan's Advisory Committee. In November 1994, petitioner's nonforfeitable accrued benefit in the plan was $74,376. There is no evidence that he had previously borrowed from the plan.

With respect to loans the proceeds of which were to be used by a plan participant to acquire a dwelling that the participant would use as his principal residence, the loan policy permitted a repayment term of up to 15 years. With respect to all other loans, the repayment term could not exceed 5 years. The loan policy specifically provided as follows:

> Participants should note the law treats the amount of any loan (other than a "home loan") not repaid five years after the date of the loan as a taxable distribution on the last day of the five year period or, if sooner, at the time the loan is in default. If

---

[2] The $50,000 figure was required to be reduced by the excess of the participant's highest outstanding loan balance during the 12-month period ending on the date of the loan over the participant's current outstanding loan balance on the loan date.

a participant extends a non-home loan having a five year or less repayment term beyond five years, the balance of the loan at the time of the extension is a taxable distribution to the participant.

During November of 1994, petitioner sought to borrow against his accrued benefit under the plan. Pursuant to Edberg's recommendation, petitioner authorized the loan transaction on behalf of the corporation's board of directors as well as the shareholders. The minutes of the board and shareholders meeting, held on November 16, 1994, provide as follows:

> The meeting was held because the Pension Plan Administrators (Edberg's people) indicate that there must be corporate approval in order for Clayton W. Plotkin to borrow from the Pension Plan. According to Annie at Edberg's office, Plotkin is able to borrow up to $50,000 but he only wants to borrow $25,000. The loan must be secured, must be payable at least quarterly of principal and interest, it can be amortized over any length but it must be paid off at five years with a balloon payment balance, and interest should be prime plus one or two percent. If there have been no other loans or changes Plotkin can borrow again at the end of the five years in the amount needed to pay off the balance of the loan.

> \*     \*     \*     \*     \*     \*     \*

> RESOLVED that Clayton W. Plotkin, be allowed to borrow $25,000 from the Pension and that there be a note with a deed of trust secured to Plotkin's house \* \* \*. The interest rate on the loan is to be 9% with monthly payments of principal and interest of $253.57. Payments are to be due the 1st day of the month and will be late if not received by the 15th day of the month. Payments start 01/01/95. The loan payments will be based on a 15 year payment with a balloon payment due when the loan is supposed to be paid off. If he is able Plotkin may borrow from the Pension Plan to pay off the balance due but must meet the requirements at that time. We will get a schedule

from the CPA on the 15 years with each year on it so that we will know the balance to be paid when the loan is supposed be paid off.

Also on November 16, 1994, petitioner executed a promissory note which he prepared evidencing the terms of the loan. The note provided that petitioner was borrowing $25,000 from the plan at an annual interest rate of 9 percent. With respect to repayment terms, the note provided that petitioner was to make monthly payments at the rate of $253.57. Petitioner inadvertently omitted from the promissory note the term requiring a balloon payment at the end of 5 years. Nonetheless, at the time of signing the promissory note, petitioner intended to repay the loan at the end of 5 years through a balloon payment of the then outstanding principal balance.[3]

In order that he would know the proper amount of the balloon payment, petitioner requested the accounting firm of Hill, D'Amore & Co., Ltd., to prepare an amortization schedule for the loan. The amortization schedule, bearing the letterhead of petitioner's accountant and dated November 21, 1994, reflected the following items: A loan date of November 16, 1994; a loan balance of $25,000; a nominal annual interest rate of 9 percent;

---

[3] Respondent does not dispute petitioner's assertion that at the time the promissory note was executed, petitioner intended to satisfy the loan through a balloon payment at the end of 5 years.

monthly payments of $253.57;[4] a 15-year term; and a principal balance of $20,119.89 at the end of the initial 5 years of the loan.  The same accountant who prepared the amortization schedule prepared petitioner's 1994 income tax return.

The loan was secured by petitioner's principal residence, as evidenced by a deed of trust which petitioner prepared and executed in favor of the plan.  Although the loan was secured by petitioner's residence, petitioner did not use the proceeds of the loan to acquire his residence.

The plan was terminated during February of 1999.  At that time, petitioner satisfied the loan by recognizing as a distribution the outstanding balance on the promissory note. Petitioner reported the distribution together with an early distribution penalty on his 1999 income tax return.

OPINION

A.    Distributions from the Plan

Section 402(a) provides generally that distributions from a qualified plan are taxable to the distributee, in the taxable year of the distributee in which distribution occurs, pursuant to section 72.  Section 72(p)(1)(A) provides the general rule that proceeds of a loan from a qualified employer plan to a plan participant are treated as a taxable distribution to the

---

[4]  The first monthly payment reflected on the amortization was actually $346.40, due on Jan. 1, 1995.

participant in the year in which the loan proceeds are received. See <u>Patrick v. Commissioner</u>, T.C. Memo. 1998-30, affd. 181 F.3d 103 (6th Cir. 1999); <u>Prince v. Commissioner</u>, T.C. Memo. 1997-324; <u>Estate of Gray v. Commissioner</u>, T.C. Memo. 1995-421.  Section 72(p)(2), however, provides an exception to this general rule. Under this exception, a loan is not treated as a taxable distribution if:  (1) The principal amount of the loan (when added to the outstanding balance of all other loans from the same plan) does not exceed a specified limit, see sec. 72(p)(2)(A); (2) the loan, by its terms, must be repaid within 5 years from the date of its inception or is made to finance the acquisition of a home which is the principal residence of the participant, see sec. 72(p)(2)(B); and (3) the loan must have substantially level amortization with quarterly or more frequent payments required over the term of the loan, see sec. 72(p)(2)(C).

Respondent argues that the loan at issue did not qualify for the exception provided by section 72(p)(2).  Accordingly, respondent determined that distribution of the loan proceeds from the plan constituted a taxable distribution pursuant to section 72(p)(1)(A).  Petitioner, on the other hand, contends that the loan satisfies each requirement of the section 72(p)(2) exception.

1.   Repayment Term

We begin with the repayment term of petitioner's loan.  In order for a loan to be excepted from being treated as a taxable distribution under section 72(p)(1)(A), the loan generally must require, by its terms, repayment within 5 years.[5]  See sec. 72(p)(2)(B)(i).  With respect to repayment provisions, the promissory note executed by petitioner called for monthly payments of $253.57.  At the 9 percent rate of annual interest stated in the note, satisfaction of the loan would not have occurred until the fifteenth year of the loan.  Respondent points out that the loan, by its terms, did not require repayment within 5 years.  Accordingly, respondent argues that the loan failed to satisfy section 72(p)(2)(B)(i).

Petitioner concedes that the promissory note, as drafted, omitted the 5-year repayment provision.  Petitioner testified that he intended the promissory note to contain a provision calling for a balloon payment at the end of the fifth year of the loan to satisfy the then outstanding principal balance, and that the omission of such provision was a product of a drafting mistake on his part.  In support of his testimony, petitioner

---

[5]  While an exception exists for loans the proceeds of which are used to purchase a principal residence, see sec. 72(p)(2)(B)(ii), the proceeds of the loan which petitioner took from the plan were not used by petitioner for this purpose. Accordingly, the exception to the 5-year repayment term requirement does not apply in this case.

notes that (1) the loan policy adopted by the plan's Advisory Committee did not permit a repayment term in excess of 5 years under the circumstances, (2) the board minutes authorizing the loan required that the loan be paid off at the end of 5 years through a balloon payment, and (3) petitioner instructed his accountant to provide him with an amortization of the loan so that he would know the proper amount of the necessary balloon payment. Petitioner therefore requests this Court to treat the promissory note as if it had been reformed to explicitly include the 5-year balloon payment provision.[6]

We need not resolve the issue of whether petitioner's loan constitutes a taxable distribution under section 72(p)(1)(A) based on the failure of the loan to meet the 5-year repayment requirement of section 72(p)(2)(B). Even if we were to find (as petitioner requests) that the loan, by its terms, was required to be paid off in its fifth year through a balloon payment of the then outstanding principal balance, the loan would fail to satisfy the requirements of section 72(p)(2)(C). We discuss this point below.

---

[6] Petitioner contends that a court of equity could have reformed the promissory note to comply with the intent of the parties, citing Boone v. Grier, 688 P.2d 1070 (Ariz. App. 1984). Petitioner argues that formal reformation of the note was not necessary in this context, because petitioner treated the note as so reformed in both his capacity as plan trustee and plan participant/obligor.

2.  <u>Substantially Level Amortization</u>

In order for a loan to qualify for the section 72(p)(2) exception to taxable distribution treatment, the loan must provide for substantially level amortization over its term.  See sec. 72(p)(2)(C).  The substantially level amortization requirement under section 72(p)(2)(C) has been interpreted as requiring that payment of principal and interest be made in substantially level amounts over the term of the loan.  See <u>Estate of Gray v. Commissioner</u>, T.C. Memo. 1995-421.  If we treat the promissory note as requiring a balloon payment in the fifth year, then the promissory note would call for 59 monthly payments of $253.57 and a final balloon payment of $20,119.89.  The balloon payment is more than 79 times larger than the regular monthly payment, and more than 80 percent of the initial principal balance.  From a textual standpoint, these payments simply cannot be characterized as substantially level.  From a policy standpoint, one of the stated purposes behind the enactment of section 72(p)(2)(C) was to prevent taxpayers from currently enjoying plan assets through the use of balloon payment loans:

> The rules governing the tax treatment of loans from certain tax-favored plans are intended to limit the extent to which an employee may currently use assets held by a plan for nonretirement purposes and to ensure that loans are actually repaid within a reasonable period.  However, there is concern that the present rules do not prevent an employee from effectively maintaining a permanent outstanding $50,000

loan balance <u>through the use of balloon repayment
obligations</u> * * * from third parties.  [H. Rept. 99-
426, at 735 (1985), 1986-3 C.B. (Vol. 2) 1, 735; S.
Rept. 99-313, at 618 (1986) 1986-3 C.B. (Vol. 3) 1,
618; Emphasis added.]

Accordingly, we hold that the balloon payment provision which
petitioner requests we incorporate into the promissory note would
cause the loan to violate the requirements of section
72(p)(2)(C).

3.    <u>Conclusion as to Section 72(p)</u>

If we were to interpret the promissory note according to its
express provisions, then petitioner's loan would violate the 5-
year repayment requirement of section 72(b)(2)(B)(i).  If we
incorporate into the promissory note a provision calling for a
balloon payment at the end of the fifth year of the loan, then
the loan fails to provide for substantially level amortization as
required by section 72(b)(2)(C).  Thus, under either possible
interpretation of the promissory note, petitioner's loan fails to
qualify for the section 72(p)(2) exception.  The loan therefore
constitutes a taxable distribution pursuant to section
72(p)(1)(A).

B.    <u>Tax on Early Distributions</u>

Section 72(t)(1) provides for a 10-percent additional tax on
early distributions from a qualified pension plan.  See <u>Chapman
v. Commissioner</u>, T.C. Memo. 1997-147.  Section 72(t)(2) sets
forth specific exemptions.  Petitioner does not argue that any of
the statutory exceptions applies to him.  Accordingly, we sustain

respondent's determination as to the section 72(t) additional
tax.

C.    Accuracy-Related Penalty

Pursuant to section 6662(a), respondent determined an
accuracy-related penalty of 20 percent of the amount of the
underpayment attributable to a substantial understatement of tax.
In the alternative, respondent imposed the accuracy-related
penalty on the amount of the underpayment due to negligence or
disregard of the rules and regulations.  Respondent's
determinations are presumed to be correct, and petitioner bears
the burden of proving that the accuracy-related penalty does not
apply.  See Rule 142(a).

A substantial understatement of tax is defined as an
understatement of tax that exceeds the greater of 10 percent of
the tax required to be shown on the return or $5,000.  See sec.
6662(d)(1)(A).  The understatement is reduced to the extent the
taxpayer has (1) adequately disclosed his or her position and has
a reasonable basis for the tax treatment of the item, or (2) has
substantial authority for the tax treatment of the item.  See
sec. 6662(d)(2)(B).  Section 6662(c) defines "negligence" as any
failure to make a reasonable attempt to comply with the
provisions of the Internal Revenue Code, and "disregard" as any
careless, reckless, or intentional disregard.

Whether applied based on a substantial understatement of tax or negligence or disregard of the rules or regulations, the accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. See sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.; see also Hickman v. Commissioner, T.C. Memo. 1997-545. Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good-faith reliance on the advice of a professional such as an accountant. See Jorgenson v. Commissioner, T.C. Memo. 2000-38; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner cites his intent to comply with section 72(p) for the purpose of showing that he acted with reasonable cause and good faith in not reporting the loan as a taxable distribution on his 1994 income tax return. Petitioner hired a qualified plan administrator on whose advice he relied at the time of entering into the loan. The minutes of the board meeting that were prepared contemporaneously with the loan indicate that petitioner relied upon information from "Annie in Edberg's office" for the proposition that he could amortize the loan over 15 years as long as it was repaid with a balloon payment within 5 years.

Furthermore, petitioner provided his accountant with the relevant loan documents. As reflected in the amortization schedule prepared by petitioner's accountant, the accountant was aware that petitioner borrowed $25,000 from the plan the payment of which was to be amortized over 15 years. The same accountant prepared petitioner's 1994 income tax return.

Based on the record before us, we find that petitioner acted with reasonable cause and in good faith in reporting his 1994 income tax liability. Accordingly, the accuracy-related penalty does not apply.

In reaching our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.