T.C. Summary Opinion 2002-33

UNITED STATES TAX COURT

WALLACE F. AND MI-JA H. SMITH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10017-00S.                    Filed April 3, 2002.

Wallace F. and Mi-Ja H. Smith, pro se.

<u>Daniel J. Parent</u>, for respondent.


COUVILLION, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $20,453 in petitioners' Federal income tax for 1997 and an accuracy-related penalty under section 6662(a) of $3,211.20.

The issues for decision are: (1) Whether petitioners failed to include in income distributions from various employee retirement plans of Wallace F. Smith (petitioner) during the year at issue; (2) whether petitioners are entitled to a deduction for a casualty or theft loss of $300,000; and (3) whether petitioners are liable for the accuracy-related penalty under section 6662(a).

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Walnut Creek, California.

Petitioner has a bachelor's degree in economics from Yale University, a master's degree in economics from the University of Connecticut, and a Ph.D. in economics from the University of Washington. He began teaching economics at the University of California at Berkeley (Berkeley) in 1959 and continued teaching there, in the Haas School of Business, until January 1997. At that time, petitioner was dismissed from Berkeley after declining the opportunity to resign or retire voluntarily. Although the circumstances surrounding petitioner's dismissal from Berkeley

are unclear, the fact of his dismissal in January 1997 is not in dispute.[2]

Following his dismissal from Berkeley, through the end of the year at issue, petitioner received the following distributions from various retirement plans held for his benefit at Berkeley:

| U. of California Benefits Program | Distribution |
| --- | --- |
| Pension Plan | $61,378.13 |
| Defined Contribution Plan | 12,623.61 |
| Capital Accumulation Provision Account | 14,207.14 |
| Total | $88,208.88 |

Petitioner also received a distribution of $11,281 from an IRA at Bank of America during 1997.

On their Federal income tax return for 1997, petitioners reported, in pertinent part, total pension and annuity income of $61,378.13, with $41,917 being taxable; total IRA distributions of $11,281.35, with zero being taxable; and other income as liquidated savings of $44,569.82, with zero being taxable. Petitioners also reported wages of $6,911.81, taxable interest of $929.78, a taxable State income tax refund of $746.92, and taxable Social Security benefits of $18,808. Thus, petitioners

---

[2] Berkeley contends petitioner was dismissed for "intentionally and without justification, failing to teach two assigned courses during the 1995-96 academic year." Petitioner contends he was dismissed for exposing various acts of fraud by faculty members and administrators within the university.

reported adjusted gross income of $69,313.51 for 1997. Among other itemized deductions not at issue herein, petitioners claimed a deduction for a casualty or theft loss of $300,000 in connection with the loss, at the time of petitioner's dismissal from Berkeley, of his employer-sponsored term life insurance policy having a face value of $300,000. Thus, petitioners reported a zero tax liability for 1997, a withholding credit of $14,019.67, and an overpayment of $14,019.67.

In the notice of deficiency, respondent determined that petitioners failed to include in income $45,955 in taxable retirement distributions from Berkeley and that the $11,281 distribution from petitioner's Bank of America IRA was taxable. Respondent determined further that petitioners were not entitled to a deduction for the $300,000 casualty or theft loss claimed on their return and that petitioners were liable for the accuracy-related penalty under section 6662(a) for a substantial understatement in tax or for negligence or disregard of rules or regulations in the amount of $3,211.20.

The first issue is whether petitioners failed to include in income $45,955 in taxable retirement plan distributions for the year at issue identified above as the U. of California Benefits Program. Beginning in February 1997, petitioner began receiving monthly pension checks of $5,579.83 from the University of California totaling $61,378.13 for the year (the pension

distribution). Of the total pension distribution for 1997, $335.39 of this amount, i.e., $30.49 per month for 11 months, was attributable to after-tax employee contributions and, thus, was nontaxable. The portion of petitioner's total pension distribution that was includable in petitioners' 1997 income was $61,042.74.

In April 1997, the Defined Contribution Retirement Plan of the University of California Benefits Program distributed $12,623.61 to petitioner (the defined contribution plan distribution). Of this amount, petitioner actually received $9,846.42, with $2,524.72 withheld for Federal income taxes and $252.47 withheld for State income taxes. Also in April 1997, the University of California Benefits Program distributed to petitioner $14,207.14 from his Capital Accumulation Provision (CAP) Retirement Account (the CAP distribution). Of this amount, petitioner received $11,081.57, with $2,841.43 withheld for Federal income taxes and $284.14 withheld for State income taxes.

As stated previously, petitioners reported on their return total pension and annuity income of $61,378.13, with $41,917 being taxable, and other income as liquidated savings of $44,569.82 with zero being taxable. Thus, in connection with the three distributions from Berkeley, i.e., the pension distribution, the defined contribution plan distribution, and the CAP distribution, petitioners included $41,917 in gross income.

Petitioner actually received total distributions from Berkeley during 1997, that were not attributable to after tax employee contributions, of $87,873.49, which exceeds the amount petitioners included in income by $45,956.49. In the notice of deficiency, respondent determined that petitioners failed to report $45,955 in "U C Berkeley 1099R (3)" income. In other words, petitioners failed to include in income a total of $45,955 from the three separate retirement distributions from Berkeley.[3]

Section 61(a) provides that gross income includes "all income from whatever source derived," unless otherwise provided. More specifically, section 61(a)(1), (9), and (11), respectively, provides that gross income includes "compensation for services, including fees, commissions, fringe benefits, and similar items"; "annuities"; and "pensions". A fundamental principle of tax law is that income is taxed to the person who earns it, when he earns it or derives it from property he owns. Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111 (1930). Moreover, determining the ownership of property is a question of fact, on which the taxpayer generally has the burden of proof. Rule 142(a); Hang v. Commissioner, 95 T.C. 74, 80

_____

[3] The $1.49 difference between the $45,956.49 petitioner received but failed to include in income and the $45,955 determined by respondent is not explained in the record.

(1990).[4] The actual control over the property and the enjoyment of profits from such property are of paramount importance in establishing ownership. Taylor v. Commissioner, 27 T.C. 361, 368 (1956), affd. 258 F.2d 89 (2d Cir. 1958).

Petitioners admitted receiving the stated distributions from Berkeley; however, petitioners object to the pension distribution, the defined contribution plan distribution, and the CAP distribution being characterized as "retirement pensions" or "retirement distributions". Petitioners contend that the distributed amounts (over those that were included in income) should not be included in their 1997 income for various reasons, such as, "In 1997 the University of California -- illegally -- cancelled our life insurance (including irreplaceable term life), cancelled my lifetime employment contract, said our savings (held

---

[4] The Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726, added sec. 7491, which, under certain circumstances, places the burden of proof on the Secretary with respect to factual issues relevant to a taxpayer's liability for taxes and the burden of production on the Secretary with respect to a taxpayer's liability for penalties and additions to tax in court proceedings arising in connection with examinations commencing after July 22, 1998. The examination of petitioners' return commenced after July 22, 1998. Nevertheless, the burden of proof with respect to the items of deficiency did not shift to respondent because petitioner did not provide substantiation and credible evidence in connection therewith. Higbee v. Commissioner, 116 T.C. 438 (2001). Moreover, respondent has satisfied the burden of production with respect to the accuracy-related penalty under sec. 6662(a).

by UC) would be lost", and "savings were liquidated for safety as 'involuntary conversion'", and so forth.

Petitioners further contend that petitioner's dismissal from Berkeley was an illegal retaliatory act carried out by officials at Berkeley to punish petitioner for reporting various fraudulent acts of Berkeley officials. Petitioners also claim that administrative officials at Berkeley, along with generous benefactors of Berkeley, plotted to have petitioner killed for reporting fraudulent activity. Finally, petitioners contend that the issuance of the notice of deficiency resulted from a conspiracy between Berkeley and the Internal Revenue Service to harass petitioner for his whistle-blowing.

Petitioners did not assert a valid position or present any evidence or authority to support their contention that the $45,955 in retirement distributions from Berkeley was not includable in gross income. The arguments they advanced are completely lacking in factual and legal foundation and, in essence, constitute a protest of the Federal tax laws. Similar types of arguments have been heard on numerous occasions by this Court, as well as other courts, and have been consistently and vehemently rejected. The Court, here, sees no need to further respond to such arguments with somber reasoning and copious citations of precedent, as to do so might suggest that petitioners' arguments possess some measure of colorable merit.

See Crain v. Commissioner, 737 F.2d 1417 (5th Cir. 1984). In short, petitioners are taxpayers subject to the income tax laws and to the jurisdiction of this Court. See Abrams v. Commissioner, 82 T.C. 403, 406-407 (1984).

On this record, the Court holds that petitioners failed to include in income $45,955 in retirement plan distributions from Berkeley for 1997. Respondent is, therefore, sustained on this issue.

With respect to the $11,281 IRA distribution from Bank of America to petitioner during 1997, petitioners reported the distribution on their 1997 return but reported the taxable amount as zero. Petitioners appear to argue that the distribution should not be included in income for the year at issue because the liquidation of the IRA constituted an involuntary conversion forced upon them by petitioner's dismissal from employment with Berkeley in that, due to the fact that petitioner was no longer employed after January 1997, petitioners were forced to use accumulated savings to pay their living expenses, including the subject IRA.

In general, any amount paid or distributed out of an individual retirement account is includable in gross income of the payee or distributee in accordance with section 72. Sec. 408(d)(1); sec. 1.408-4(a)(1), Income Tax Regs; Arnold v. Commissioner, 111 T.C. 250, 253 (1998). Section 408(d)(3)

provides an exception to the general rule where the entire amount received is rolled over into an IRA or individual retirement annuity for the benefit of the distributee within 60 days after the receipt of the distribution. Additionally, distributions are not includable in a distributee's income to the extent that any distribution, or any portion of any distribution, is allocable to the distributee's "investment in the contract." Sec. 72(e)(2). Generally, however, the basis of an IRA is zero. Sec. 1.408-4(a)(2), Income Tax Regs.; Costanza v. Commissioner, T.C. Memo. 1985-317.

Petitioners admitted receipt of the $11,281 distribution from petitioner's Bank of America IRA in 1997 and reported the distribution on their return for that year, even though they failed to include the distribution in gross income. Petitioners do not qualify for the rollover exception provided in section 408(d)(3) because petitioners did not roll over any portion of the distribution into another IRA or other retirement account. Moreover, petitioners failed to show that they made any nondeductible or excess contributions to the IRA that would have increased their basis therein, and, thus, petitioners' tax basis in the IRA was zero. Patrick v. Commissioner, T.C. Memo. 1998-30, affd. 181 F.3d 103 (6th Cir. 1999). Petitioners do not claim, and nothing in the record suggests, that petitioners should otherwise be given credit for any investment in the IRA

within the meaning of section 72(e)(3)(A)(ii) and (e)(6). Consequently, the entire amount of the IRA distribution of $11,281 is includable in petitioners' 1997 income. Sec. 72(e)(3)(A). The Court rejects petitioners' involuntary conversion argument. Respondent is sustained on this issue.

The next issue is whether petitioners are entitled to a deduction for a $300,000 casualty or theft loss for 1997. On their Federal income tax return for 1997, petitioners, on Form 4684, Casualties and Thefts, reported a casualty or theft loss of personal use property in the amount of $300,000. After application of the $100 limitation and the 10 percent adjusted gross income floor, as required by statute, the remaining amount of the loss, $292,968.65, was claimed on Schedule A, Itemized Deductions, as a casualty or theft loss deduction.

Petitioners contend they sustained the casualty or theft loss as a result of the cancellation of petitioner's employer-sponsored term life insurance policy, when his employment with Berkeley was terminated in 1997. Petitioners claimed the $300,000 loss because the face value of the life insurance policy at the time of cancellation was estimated at $300,000. On Form 4686, petitioners described the lost property as "Insurance Coverage Wrongfully Cancelled". Respondent determined that petitioners were not entitled to a casualty or theft loss

deduction because petitioners had no basis in the relevant term life insurance policy.

Section 165(a) allows a taxpayer to deduct any loss sustained during the taxable year and not compensated for by insurance or otherwise.  In particular, section 165(c)(3) allows a deduction to an individual for loss of property not connected with a trade or business or a transaction entered into for profit, if such loss arises from fire, storm, shipwreck, or other casualty, or from theft.  Personal casualty or theft losses are deductible only to the extent that the loss exceeds $100 and 10 percent of adjusted gross income.  Sec. 165(h)(1) and (2). Moreover, such losses are deductible as itemized deductions on Schedule A of a taxpayer's return.

The measure of a casualty or theft loss is determined by section 1.165-7(b)(1), Income Tax Regs.  Generally, the loss shall be the lesser of (1) the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty, or (2) the amount of the adjusted basis prescribed in section 1.1011-1, Income Tax Regs., for determining loss from the sale or other disposition of the property.  Under section 1.1011-1, Income Tax Regs., adjusted basis is the cost or other basis of property under section 1012, adjusted to reflect allowable deductions for depreciation under section 1016.

The claimed loss was a term life insurance policy that had no cash surrender value upon termination, as distinguished from a whole life insurance policy that generally has a cash surrender value over time as premiums are paid. Petitioners admit that their term insurance policy had no cash surrender value, and that any obligations under the policy simply terminated upon the cessation of premium payments.

Petitioners produced no evidence of a basis in the subject term insurance policy.[5] Thus, petitioners are not entitled to a deduction for a casualty or theft loss in 1997. Respondent is sustained on this issue.

The final issue is whether petitioners are liable for the accuracy-related penalty under section 6662(a) for a substantial understatement in tax or for negligence or disregard of rules or regulations.[6] Section 6662(a) provides that, if it is applicable

---

[5] Accordingly, the Court need not address the question of whether petitioners actually suffered a casualty or theft within the meaning of sec. 165(c)(3).

[6] The notice of deficiency stated that $16,056 of the understatement of tax required to be shown on the return for 1997 constituted a substantial understatement of income tax (within the meaning of sec. 6662(b)(2)) or was due to negligence or disregard of rules or regulations (within the meaning of sec. 6662(b)(1)). Additionally, respondent's trial memorandum asserts that the underpayment was both substantial and due to negligence or disregard of rules or regulations. Neither the notice of deficiency nor the trial memorandum explains why the sec. 6662(a) penalty was applied to an underpayment of only $16,056, rather than to the entire deficiency of $20,453.

The maximum accuracy-related penalty imposed on an

(continued...)

to any portion of an underpayment in taxes, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which section 6662 applies.  Under section 6664(c), however, no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause for the portion, and that the taxpayer acted in good faith with respect to the portion of the underpayment.

Under section 6662(b)(2), there is a substantial understatement of income tax if the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return, or (2) $5,000.  Sec. 6662(d)(1)(A).  For purposes of section 6662(d)(1), "understatement" is defined as the excess of tax required to be shown on the return over the amount of tax that is shown on the return, reduced by any rebates.  Sec. 6662(d)(2)(A).

---

[6](...continued)
underpayment of tax may not exceed 20 percent of the underpayment, notwithstanding that the portion is attributable to more than one of the types of misconduct described in sec. 6662(a).  Sec. 1.6662-2(c), Income Tax Regs.  Therefore, although the underpayment of tax required to be shown on petitioners' 1997 income tax return may have been attributable to both a substantial understatement of income tax and negligence, the maximum accuracy-related penalty petitioners would be liable for is 20 percent.  Thus, the Court considers the sec. 6662(a) penalty only as to the substantial understatement allegation and not as to the negligence or disregard of rules or regulations allegation.

Section 6662(d)(2)(B) provides that the amount of the understatement shall be reduced by that portion of the understatement that is attributable to the tax treatment of any item by the taxpayer if there is or was substantial authority for the treatment, or any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return, and there is reasonable basis for such treatment.

The tax that was required to be shown on petitioners' 1997 return, based on respondent's adjustments, was $20,453. Petitioners' return showed a tax of zero. Despite respondent's lack of explanation, the Court surmises that respondent determined $4,397 of this difference to have been adequately disclosed, and, therefore, $16,056 was considered the understatement of tax for purposes of section 6662(d)(2)(A). In any event, the $16,056 clearly exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return (i.e., $2,045.30). It follows that petitioners' understatement of tax was substantial for purposes of section 6662(d)(1)(A).

The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances of each particular case. Sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and reliance on the advice of a

professional, such as an accountant.  <u>Drummond v. Commissioner</u>, T.C. Memo. 1997-71.  The most important factor is the extent of the taxpayer's effort to determine the taxpayer's proper tax liability.  Sec. 1.6664-4(b)(1), Income Tax Regs.  An honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith.  <u>Remy v. Commissioner</u>, T.C. Memo. 1997-72.

While the Court sympathizes with petitioners and understands the difficulties, financial and otherwise, they encountered from the termination of petitioner's employment with Berkeley, such difficulties do not constitute reasonable cause for an understatement of Federal income tax within the meaning of section 6664(c).  The record reflects that petitioners failed to make a sufficient effort to determine their proper tax liability for 1997.  They failed to include several retirement account distributions in their 1997 income and claimed a $300,000 casualty or theft loss for termination of an employer-sponsored term life insurance policy, despite the fact that there existed no precedent for any such tax treatment.  Even assuming that petitioners acted in good faith, the requirements of the Internal Revenue Code have not been met in this case because petitioners failed to make a showing that there was a reasonable cause for their understatement of income as required by section 6664(c).

Although petitioners may perceive the accuracy-related penalty under section 6662(a) to be unfair, the applicable statutory language is clear and unambiguous, and this Court has no power to expand the explicit terminology of the statute. Donigan v. Commissioner, 68 T.C. 632, 636 (1977).  The Court must apply the law as written.  Accordingly, respondent is sustained on the imposition of the accuracy-related penalty under section 6662(a).

Reviewed and adopted as the report of the Small Tax Case Division.


Decision will be entered

for respondent.