T.C. Summary Opinion 2009-80

UNITED STATES TAX COURT

VINCENT MARQUEZ, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25885-07S.                    Filed May 20, 2009.

Vincent Marquez, pro se.

Sheila Olaksen, for respondent.

PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $2,346 in petitioner's 2005 Federal income tax.

The issues for decision are: (1) To what extent proceeds of a loan petitioner took from his employer-provided pension plan are taxable in 2005; and (2) whether petitioner is liable for the 10-percent additional tax pursuant to section 72(t) on a deemed distribution.[2]

## Background

Some of the facts have been stipulated, and we incorporate the stipulation and accompanying exhibits by this reference. Petitioner lived in New York when he filed the petition.

At all relevant times petitioner worked for the City of New York as an emergency medical technician and participated in the New York City Employees' Retirement System (NYCERS). He applied for and received several loans from his NYCERS account, consistently selecting the maximum loan amounts, as well as the minimum repayment amounts, allowed by NYCERS.

On May 23, 2005, petitioner signed an application to refinance his loans. The loan processing authorization document, which petitioner signed the same day, explicitly stated that the

---

[2] The parties have settled an issue related to petitioner's State income tax refund.

refinancing option would likely result in income taxable to petitioner. The document also offered two other options that would not result in income: (1) An additional loan on the original terms; or (2) a new loan for a smaller amount. Petitioner chose the refinancing loan of $12,346.95.[3] If petitioner had borrowed on the "original terms", as he had in 2004, he would have had to repay the $12,346.95 in 77 payments. Instead, the replacement loan reset the number of remaining payments to the maximum of 130.

NYCERS issued a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for tax year 2005, reporting a distribution of $10,032, with no Federal income tax withheld. Petitioner filed his 2005 Form 1040, U.S. Individual Income Tax Return, and did not report this $10,032 as income.

Respondent issued a notice of deficiency on August 20, 2007, determining a deficiency of $2,346 resulting from the unreported loan proceeds and the 10-percent additional tax imposed by section 72(t).

In his petition and at trial petitioner asserted that the loan proceeds should be excluded from income pursuant to section 72(p)(2).

---

[3] Petitioner received $4,630 in loan proceeds. The remainder of the loan was utilized to repay the $7,716.95 outstanding balance of the prior loans.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner has neither alleged that section 7491(a) applies nor established his compliance with its requirements.[4] Petitioner therefore bears the burden of proof. In any event, there is no factual dispute in this case.

## I. Includability of Qualified Retirement Plan Loan Proceeds

In 1982 Congress was "concerned that the widespread use of loans from tax-qualified plans and tax-sheltered annuities diminishes retirement savings." S. Rept. 97-494, at 319 (1982). Recognizing that rank-and-file employees might need access to retirement savings for emergencies, Congress allowed for loans to be made from those savings. Id. To deter people from abusing the system to their own detriment, section 72(p) allows loans from qualified retirement plans only to the extent that they do not exceed a limited proportion of the nonforfeitable amount of

---

[4] Regardless of whether the additional tax under sec. 72(t) is a penalty or an additional amount to which sec. 7491(c) applies to place the burden of production on respondent, respondent has met that burden of production. See, e.g., Milner v. Commissioner, T.C. Memo. 2004-111 n.2.

the plan and must be repaid within 5 years via equal payments. See The Tax Reform Act of 1986, Pub. L. 99-514, sec. 1134(b), 100 Stat. 2483; Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 236, 96 Stat. 509 (replacing section 72(m)).

Section 402(a) provides generally that a distribution from a qualified plan is taxable in the year in which the distribution occurs, pursuant to section 72. Section 72(p)(1)(A) provides the general rule that proceeds of a loan from a qualified employer plan to a plan participant are treated as a taxable distribution in the year in which the loan proceeds are received. See Patrick v. Commissioner, T.C. Memo. 1998-30, affd. without published opinion 181 F.3d 103 (6th Cir. 1999).

Section 72(p)(2), however, provides an exception to this general rule. Loan proceeds are not treated as a taxable distribution if: (1) The principal amount of the loan (when added to the outstanding balance of all other loans from the same plan) does not exceed a specified limit, sec. 72(p)(2)(A);[5] (2) the loan, by its terms, must be repaid within 5 years of inception (unless the loan financed the acquisition of a home which is the principal residence of the participant), sec.

---

[5] Sec. 72(p)(2)(A), specifying the limit, provides that the exemption applies only when any loan (when added to the outstanding balance of all other loans from the plan) does not exceed the lesser of: (I) $50,000 (reduced under conditions not here relevant), or (ii) the greater of: (I) One-half of the present value of the participant's "nonforfeitable accrued benefit" under the plan; or (II) $10,000.

72(p)(2)(B); and (3) the loan has substantially level amortization with quarterly or more frequent payments required over the term of the loan, sec. 72(p)(2)(C).

The relevant regulation states that where a loan that satisfies section 72(p)(2) is replaced by a loan that has a later repayment date, both loans are treated as outstanding on the date of the transaction. Sec. 1.72(p)-1, Q-20, A-20(a)(2), Income Tax Regs. If the sum of both loans, as well as all other outstanding loans, exceeds the limit of section 72(p)(2)(A), then the replacement loan results in a deemed distribution in the amount that is above that limit. Id.

In 2005 petitioner applied for and received a loan that refinanced and thus replaced the loans that he had previously taken from his NYCERS account. Because he chose to repay in 130 biweekly installments instead of 77, this replacement loan effectively extended by 2 years the repayment terms of the loans being replaced.[6] The replacement loan, when added to the sum of the loans replaced, exceeded the section 72(p)(2)(A)(ii) limitation by $10,032. NYCERS advised petitioner of the probable tax consequences of his decision to refinance the loan, and

_____

[6] Because petitioner was repaying the loans from his biweekly paychecks, 130 payments would result in repayment within 5 years. Likewise, 77 payments would have resulted in repayment within 3 years.

petitioner acknowledged these consequences when he signed the loan processing authorization agreement.

Petitioner has not argued that his retirement account had a sufficient balance to be within the limitation of section 72(p)(2)(A). Petitioner instead argues that the regulations provide for a $50,000 limit on loans from qualified retirement accounts.[7]

Because the refinancing resulted in petitioner's exceeding the section 72(p)(2)(A)(ii) limit by $10,032, we hold that he received a deemed distribution of $10,032 in 2005 which is includable in income. Sec. 72(p)(1)(A).

## II. Applicability of Section 72(t) Additional Tax

The Code imposes a 10-percent additional tax on an early distribution from a qualified retirement plan. Sec. 72(t)(1). The section 72(t) additional tax applies to deemed distributions. Sec. 1.72(p)-1, Q&A-11, A-20(b), Income Tax Regs. The 10-percent additional tax is not imposed if the distribution comes within a statutory exception. Sec. 72(t)(2). None of the exceptions

---

[7] We note that the document petitioner relies upon, T.D. 9021, 2002-2 C.B. 973, is a notice of final regulations which amended sec. 1.72(p)-1, Q-20, A-20(a)(2), Income Tax Regs. Petitioner's reading of that regulation fails to note that the $50,000 limit of sec. 72(p)(2)(A)(ii)(I) applies because the taxpayer in Example (1) had a retirement account balance that exceeded $100,000. Petitioner, however, appears to have had a retirement account balance between $10,000 and $50,000. Accordingly, his loans are limited by sec. 72(p)(2)(A) to one-half of his retirement account balance.

applies in this case.  Petitioner is subject to the section 72(t) additional tax.

To reflect our disposition of the issues,

<u>Decision will be entered</u>

<u>for respondent</u>.