T.C. Summary Opinion 2016-52

UNITED STATES TAX COURT

BRUCE W. PETERSON AND LISA A. PETERSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30229-13S.                    Filed September 1, 2016.

Bruce W. Peterson and Lisa A. Peterson, pro se.

<u>Luke D. Ortner</u>, for respondent.

SUMMARY OPINION

PARIS, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered in not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $26,405 in, and a section 6662(a) accuracy-related penalty of $5,281 in relation to, petitioners' 2011 Federal income tax. After concessions, the issues for decision are whether petitioners are liable for: (1) tax with respect to taxable retirement income in excess of the amount they reported, and (2) an accuracy-related penalty for an underpayment due to a substantial understatement of Federal income tax for 2011.[2]

Background

Some of the facts have been stipulated and are so found. The stipulated facts and facts drawn from stipulated exhibits are incorporated herein by this reference. Petitioners resided in Colorado when they filed their petition.

Petitioner began his career of advising individuals on insurance and financial investments as an employee of Allstate Insurance Co. (Allstate) in 1975.

---

[2]Mr. Peterson (petitioner) conceded at trial that a distribution of $7,220 from a Roth IRA managed by Aviva Life & Annuity Co. (Aviva) was subject to the sec. 72(t) additional tax for an early distribution because his wife had not reached the age of 59-1/2 before the distribution. An adjustment was also made to petitioners' claimed medical expense deduction because of changes to petitioners' adjusted gross income. That adjustment was computational and will not be discussed further. Petitioners filed a joint Federal income tax return, and a notice of deficiency was issued to both of them. Mrs. Peterson neither appeared at nor participated in the trial, but she will be bound by the Court's decision.

As he continued through his career and legislation created new investment tools, petitioner included those tools in his financial advising. His financial advice included advice on retirement investments, including annuities, individual retirement accounts (IRAs), and Roth IRAs.[3] Before embarking on his insurance and financial planning career, petitioner completed 3-1/2 years of college, where he studied finance and business administration.

In 2000 Allstate terminated petitioner and all its other employee-agents and offered to rehire them as independent contractors.[4] Petitioner accepted Allstate's offer and rolled his Allstate pension benefits into a simplified employee pension plan (SEP-IRA) to maintain their tax deferred status.[5] His deferred compensation

---

[3]IRAs were created by the Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829. Roth IRAs were created by the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, 111 Stat. 788.

[4]The Court takes judicial notice, see Fed. R. Evid. 201, of the following: (1) in 2000 Allstate terminated over 6,000 of its employee-agents and offered to rehire them as independent contractors under its "Preparing for the Future Reorganization Program"; (2) a class action lawsuit was filed on behalf of the terminated employees, but petitioner was not one of the named plaintiffs, and there is no evidence in the record that he participated in the lawsuit; and (3) the U.S. Equal Employment Opportunity Commission (EEOC) filed an age discrimination lawsuit against Allstate on behalf of approximately 90 former Allstate employees. Allstate agreed to pay $4.5 million to settle the lawsuit in 2009. There is no evidence in the record that petitioner was involved in the EEOC litigation.

[5]A self-employed individual can establish a SEP-IRA, which follows the

(continued...)

package from Allstate consisted solely of Allstate stock. In 2009 petitioner purchased an annuity contract from Forethought Life Insurance Co. (Forethought) and rolled over his SEP-IRA to pay the single-payment premium. Petitioner believed he had a basis of $169,297.88, the amount of the single-payment premium, in the contract. The annuity contract was a qualified individual retirement annuity under section 408(b). Petitioner relied on Internal Revenue Service (IRS) Publication 590, Individual Retirement Arrangements (IRAs), when he decided to purchase the annuity contract and when he subsequently canceled the contract. Petitioner did not seek advice from his accountant regarding his purchase or cancellation of the annuity contract.

In 2011 petitioner's health declined, and he required a medical procedure for which he had to pay $11,000 out of pocket. To cover his medical costs, petitioner canceled his Forethought annuity contract and received the cash surrender value of the contract.[6] Forethought mailed petitioner a letter dated July 28, 2011, confirming that petitioner had canceled the annuity contract, had received the contract's cash surrender value of $140,088.84, and had paid a

_____

[5](...continued)
same investment, distribution, and rollover rules as a traditional IRA.

[6]Petitioner gave no explanation for why he canceled the entire annuity contract to cover medical expenses of $11,000.

surrender fee of $20,618.04. No Federal tax was withheld from the distribution, and petitioner was 60 years old at the time of the distribution.

Petitioner's original plan was to roll over the remaining funds from the annuity contract into another IRA. Approximately three weeks after the medical procedure, petitioner began experiencing complications, and he was concerned that a second procedure would be necessary. Petitioner retained the remaining funds from the annuity contract.

Petitioners reported $158,419 of IRA distributions on line 15a of their 2011 Form 1040, U.S. Individual Income Tax Return.[7] This amount included the distributions from Forethought and Aviva. Petitioners also reported $16,199 as the taxable amount of those distributions on line 15b. "ROLLOVER" is typed next to line 15b. Petitioners' accountant prepared their return.

Respondent issued petitioners a notice of deficiency determining that they had failed to report an additional $135,000 of taxable retirement income and determining a section 6662(a) accuracy-related penalty against them for an

_____

[7]Forethought issued petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting a gross distribution and taxable amount of $151,199.01. Petitioner could not explain the discrepancy between the amount reported on the Form 1099-R and the amount stated as the cash surrender amount in Forethought's letter dated July 28, 2011.

underpayment attributable to a substantial understatement of income tax. Respondent calculated the unreported taxable retirement income by subtracting the reported taxable amount of distributions on line 15b and the Aviva Roth IRA distribution from the total IRA distributions reported on line 15a ($158,419 – $16,199 – $7,220 = $135,000). Petitioners timely filed a petition with the Court for redetermination.

## Discussion

### I. Burden of Proof

Ordinarily, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under certain circumstances the burden of proof as to factual matters may shift to the Commissioner pursuant to section 7491(a). Petitioners did not argue for a burden shift under section 7491(a), and the record does not establish that the prerequisites for a burden shift have been met; therefore, the burden of proof remains theirs.

### II. The Forethought Annuity Contract Distribution

Section 408(d)(1) provides that any amount paid or distributed out of an IRA is includible in the gross income of the payee or distributee as provided under

section 72. Section 72(e) is applicable, inter alia, to amounts received under an annuity contract but not received as an annuity. Petitioner's distribution from Forethought was an amount received under an annuity contract but not received as an annuity.

Amounts received before the annuity starting date shall be includible in gross income to the extent allocable to income on the contract and shall not be includible in gross income to the extent allocable to the investment in the contract. Sec. 72(e)(2)(B); sec. 1.72-11(d), Income Tax Regs. This effectively gives a taxpayer a basis in his IRA to the extent of his investment in the contract. A taxpayer's "investment in the contract" is defined as the aggregate amount of premiums or other consideration paid for the contract reduced by the amount received that was previously excludable from gross income. Sec. 72(e)(6). If the taxpayer's investment in the contract is zero, all amounts received under the annuity contract will be includible in gross income. Sec. 1.72-4(d)(1), Income Tax Regs.; see also sec. 1.408-4(a)(2), Income Tax Regs.

Petitioner's single-payment premium for the annuity contract was $169,297.88. He rolled over his SEP-IRA to pay the annuity contract premium. Petitioner testified that he had a basis of around $169,000 in the annuity contract. He also testified multiple times that the entire amount of his SEP-IRA was funded

with pretax or nontaxed amounts. During his direct testimony, petitioner stated: "[T]he deductions were put in my IRA before I paid my income tax". He also stated: "[W]hen I invaded the IRA, I invaded non-taxed moneys". Additionally, petitioner stated that putting after-tax dollars into the rolled over SEP-IRA would be "a violation of everything I stand for." When the Court verified that petitioner stipulated that he had purchased the annuity contract with a rolled-over, nontaxed IRA for the single-payment premium, he responded: "[Y]ou're right". Petitioner's single-payment premium was funded entirely with amounts that were previously excluded from gross income and tax deferred; therefore, petitioner's basis in the annuity contract was zero. See Patrick v. Commissioner, T.C. Memo. 1998-30, aff'd without published opinion, 181 F.3d 103 (6th Cir. 1999); Vorwald v. Commissioner, T.C. Memo. 1997-15; sec. 1.72(d)(1), Income Tax Regs.

Petitioner offered into evidence at trial the Form 1099-R that Forethought had issued to him, reporting a distribution and taxable amount of $151,199. The parties also offered into evidence a letter from Forethought to petitioner that states the cash surrender value of the annuity contract was $140,088.84. Petitioner could not explain the discrepancy between the amounts on the Form 1099-R and the Forethought letter, and he testified that he had not contacted Forethought about the discrepancy. It is clear from the total amount of IRA distributions petitioners

reported on their return that they had included the amount reported on the Form 1099-R, not the amount stated in Forethought's letter, in that sum.

Petitioner argued that the amount of the IRA distributions reported as taxable was the correct amount because the funds from the annuity contract were used to pay medical expenses. He relied on IRS Publication 590 to support his argument.[8] Petitioner relied on a section of Publication 590, chapter 1, about early distributions to support his argument that no additional amount of his IRA distributions was taxable. The section on which petitioner relies discusses distributions made before the taxpayer is age 59-1/2 and several exceptions where distributions can be made before one reaches that age that will not incur a 10% additional tax. One such exception is for a distribution used to pay unreimbursed medical expenses.

The flaw in petitioner's argument is that the section on early distributions on which he relies concerns the 10% additional tax assessed on early distributions

---

[8]The Court notes that IRS publications are not authoritative sources of tax law. See Dixon v. United States, 381 U.S. 68, 73 (1965) ("Congress, not the Commissioner, prescribes the tax laws[.]"); see also Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), aff'd without published opinion, 614 F.2d 1294 (2d Cir. 1979); Green v. Commissioner, 59 T.C. 456, 458 (1972).

under section 72(t).[9]  Petitioner was 60 years old when he received the

Forethought distribution; therefore, the additional tax under section 72(t) does not

apply.

Petitioner has confused an exception to the additional tax for an early

distribution for unreimbursed medical expenses with the general rule that any

distribution from an annuity contract will be includible in gross income.  The fact

that petitioner used a portion of the distribution to pay medical expenses does not

shield the distribution from taxation.  Petitioner has failed to prove that an

additional $135,000 of his IRA distributions was not a taxable distribution.

III.    Accuracy-Related Penalty

Respondent determined an accuracy-related penalty of $5,281 for a

substantial understatement of Federal income tax.  Section 6662(a) and (b)(2)

authorizes a 20% penalty on the portion of an underpayment of income tax

attributable to a substantial understatement of income tax.  Under section 7491(c),

the Commissioner bears the burden of production with regard to penalties.  Higbee

v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner has met the

burden of production, the taxpayer has the burden of proving that the penalties are

---

[9]Petitioner's annuity contract was a qualified individual retirement annuity under sec. 408(b); thus it constituted a qualified retirement plan under sec. 4974(c).  Therefore, the provisions of sec. 72(t) rather than subsec. (q) apply.

inappropriate because of reasonable cause or substantial authority.  See Rule 142(a); Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), aff'g T.C. Memo. 1982-337; Higbee v. Commissioner, 116 T.C. at 446-447.

There is a "substantial understatement" of income tax for any year if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000.  Sec. 6662(d)(1)(A); Higbee v. Commissioner, 116 T.C. at 448.

The understatement of income tax is $26,405, which is greater than $5,000, which in turn is greater than 10% of the tax required to be shown on the return. Thus, the understatement of income tax for 2011 is substantial for purposes of the section 6662(a) accuracy-related penalty.

Pursuant to section 6664(c)(1), no penalty shall be imposed under section 6662 with regard to any portion of an underpayment if it can be shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.  Whether a taxpayer acted with reasonable cause and in good faith is decided on a case-by-case basis, taking into account all pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Generally, the most important factor is the extent of the taxpayer's effort to assess his proper tax liability.  Id.; see also Remy v. Commissioner, T.C. Memo. 1997-72.

Petitioner testified that he gave all of the pertinent documents to his accountant and that "it takes about 15 minutes to do his taxes". Petitioner did not review the return after his accountant prepared it and did not ask his accountant about the discrepancy between the amount on the Form 1099-R, which was attached to his return, and the amount in the Forethought letter. Taxpayers have a duty to review their tax returns before signing and filing them. Magill v. Commissioner, 70 T.C. 465, 479-480 (1978), aff'd, 651 F.2d 1233 (6th Cir. 1981). "Reliance on a tax return preparer cannot absolve a taxpayer from the responsibility to file an accurate return." Devy v. Commissioner, T.C. Memo. 2015-110, at *4 (citing Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987) ("As a general rule, the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer.")). Additionally, petitioner did not discuss with his accountant his opinion that he had a basis from rolling his SEP-IRA into an annuity contract or the subsequent cancellation of the contract and the coinciding distribution. Neither did he seek any advice when he received contrary reporting information from Forethought before filing his return.

Because of petitioner's experience as a financial and retirement investment adviser, his failure to seek his accountant's advice about his annuity contract and the cancellation of the contract and the distribution from Forethought, and his

failure to review his 2011 return, the Court finds that he failed to prove that he acted with reasonable cause and in good faith in his effort to assess his proper tax liability. Therefore the Court will sustain respondent's determination of an accuracy-related penalty for an underpayment due to a substantial understatement of income tax for 2011.

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.